UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PETER D. ELDRIDGE,
    Petitioner,

vs.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
    Respondent.

Case No. 1:16-cv-040

Bertelsman, J.
Wehrman, M.J.

**REPORT AND RECOMMENDATION**

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter is before the Court on the petition, respondent's return of writ, and petitioner's reply. (Docs. 1, 6, 13).

## I. FACTUAL BACKGROUND

The Ohio Court of Appeals, Fourth Appellate District set forth the following summary of the facts that led to petitioner's conviction and sentence:[1]

> {¶ 2} As early as 1995, anonymous callers began informing law enforcement that Eldridge was selling drugs from his residence. In 2010, Detective John Koch of the Scioto County Sheriff's Office conducted a controlled buy from Eldridge using a confidential informant. Det. Koch gave the informant an audio recording device and money, which Det. Koch had previously photocopied, and observed the informant enter Eldridge's residence. After the transaction was complete, Det. Koch met the informant at a prearranged location and debriefed him. Det. Koch recovered a pill containing oxycodone, which the informant stated he obtained from Eldridge. Det. Koch and the informant conducted three more controlled

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

buys from Eldridge, each yielding oxycodone, though one of the times the informant bought the pill from Eldridge's son.

{ ¶ 3} Det. Koch then presented an affidavit containing the anonymous call history surrounding Eldridge and his residence and details of the four controlled buys to a judge at the Scioto County Municipal Court. The judge issued a search warrant for Eldridge's residence.

{ ¶ 4} Det. Koch and other law enforcement officers then travelled to Eldridge's residence. Eldridge's residence was set back from the road and there were security cameras. Det. Koch and his team exited the van in a stack formation with Det. Koch at the front wielding a battering ram and all members wearing tactical vests emblazoned with "Sheriff's Office" or "Police Department." Immediately upon approaching the door to the residence, which was comprised almost entirely of transparent glass, Det. Koch saw Eldridge's son. The son began shouting to someone inside the residence and Det. Koch and his team announced their presence by repeatedly shouting, "Sheriff's office, search warrant!" Det. Koch also made eye contact with Eldridge's son during this time, as the team was only three to four feet from the door.

{ ¶ 5} Det. Koch tried to open the door, but it would not open. Even though Eldridge's son saw the law enforcement officers approach the door and heard their announcement, he made no effort to admit them into the residence or to permit Det. Koch to be able to open the door. Det. Koch told the son to move back as he prepared to breach the door with the battering ram. While Det. Koch intended to hit the door frame with the ram, he missed, sending the ram through the glass portion of the door and lacerating his arm in the process.

{ ¶ 6} Law enforcement entered the residence, secured the persons therein, and executed the search. They recovered large quantities of controlled substances, including oxycodone, and over $11,000 in cash.

(Doc. 8, Ex. 12 at PageID 188–90).

## II. PROCEDURAL HISTORY

### State Trial Court Proceedings

On November 3, 2010, the Scioto County, Ohio grand jury returned an indictment charging petitioner with fourteen counts of drug-related offenses in Case No. 10-CR-946. (Doc. 8, Ex. 1). Through counsel, petitioner entered a plea of not guilty to the charges in the

2

indictment.

On January 12, 2011, petitioner filed a motion to suppress evidence seized through a search warrant. Petitioner argued that the search warrant lacked probable cause and that officers executing the warrant violated his constitutional rights by not following the "knock and announce" requirements. (Doc. 8, Ex. 2). Following a hearing, the trial court denied the motion. (Doc. 8, Ex. 4).

A second indictment was issued on February 14, 2011 in Case No. 11-CR-097, charging petitioner with four counts of trafficking in drugs within the vicinity of a juvenile, six counts of possession of drugs, three counts of trafficking in drugs, and one count each of conspiracy to trafficking in drugs and possession of drugs with a forfeiture specification. (Doc. 8, Ex. 5). On March 9, 2011, upon the agreement of the parties, Case No. 10-CR-946 was merged into Case No. 11-CR-097. (Doc. 8, Ex. 6).

Petitioner initially entered a not-guilty plea, before entering a plea of no contest to two counts of aggravated trafficking in drugs within the vicinity of a juvenile and one count of trafficking in drugs. (Doc. 8, Ex. 7). On July 20, 2011, the trial court accepted petitioner's guilty plea and sentenced petitioner to a total aggregate prison sentence of nine years in the Ohio Department of Corrections. (Doc. 8, Ex. 8).

## Direct Appeal

Petitioner, through different counsel, filed a timely appeal to the Ohio Court of Appeals. (Doc. 8, Ex. 9). Petitioner raised the following two assignments of error:

> I. The trial court erred in denying the Defendant-Appellant's motion to suppress evidence obtained through execution of a warrant issued in violation of rights secured to the Defendant under the Fourth and Fourteenth Amendments of the United States Constitution, and Section 14, Article 1 of

3

> the Ohio Constitution. The warrant was based on an affidavit which failed to establish a sufficient nexus between the suspected criminal conduct and the place to be searched.
>
> II. The trial court erred to the prejudice of the Defendant-Appellant in failing to find that the manner of execution of the search warrant in this case was unreasonable under the Fourth and Fourteenth Amendments of the United States Constitution and Section 14, Article I of the Ohio Constitution and in consequently denying the Defendant's motion to suppress.

(Doc. 8, Ex. 10). On August 10, 2012, the Ohio appellate court overruled petitioner's assignments of error and affirmed the judgment of the trial court. (Doc. 8, Ex. 12).

## Delayed Appeals to Ohio Supreme Court

On October 15, 2012, petitioner filed a pro se notice of appeal and notice of delayed appeal to the Ohio Supreme Court. (Doc. 8, Ex. 13). On November 28, 2012, the Ohio Supreme Court denied the delayed appeal motion and dismissed the appeal. (Doc. 8, Ex. 14).

Petitioner filed a second pro se notice of appeal and motion for leave to file a delayed appeal to the Ohio Supreme Court from the appeals court's August 10, 2012 decision on October 8, 2015. (Doc. 8, Ex. 29, 30). On December 2, 2015, the Ohio Supreme Court denied the motion and dismissed the case. (Doc. 8, Ex. 32).

## Post-Conviction Motions

Meanwhile, on September 10, 2013, petitioner filed a pro se motion for resentencing pursuant to Criminal Rule 47. (Doc. 8, Ex. 15). Plaintiff included the following single claim in support of his motion:

> CLAIM ONE: The Fourth Amendment to the United States Constitution and Ohio Constitution Article I, Section 14, prohibits police from making a warrantless and non consenual (sic) into a suspect's home to make a felony arrest.

(*Id.* at PageID 254). On October 22, 2013, the trial court denied the motion, finding the petition

4

to be untimely and barred by the doctrine of *res judicata*. (Doc. 8, Ex. 17).

Petitioner filed a timely pro se appeal from the trial court's ruling. (Doc. 8, Ex. 18). Petitioner raised the same claim raised in the post-conviction petition as his sole assignment of error on appeal. (*See* Doc. 8, Ex. 19). On May 21, 2014, the appeals court reversed and vacated the judgment of the trial court, finding that petitioner's motion was untimely filed and the trial court therefore lacked jurisdiction to address the merits of the petition and should have dismissed it for lack of jurisdiction. (Doc. 8, Ex. 21).

On June 6, 2014, the trial court issued a judgment entry dismissing petitioner's post-conviction petition for lack of jurisdiction. (Doc. 8, Ex. 22). The trial court inadvertently docketed the entry under the wrong case number, before issuing a corrected judgment entry on June 23, 2014. (Doc. 8, Ex. 23).

Petitioner filed a timely notice of appeal from the corrected judgment entry. (Doc. 8, Ex. 24). Petitioner raised the following single assignment of error:

> Appellant was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendment to the Constitution of the United States and by Article I, Section 10 of the Ohio Constitution through counsel's failure to appropriately investigate this case in its entirety.

(Doc. 8, Ex. 25). On March 2, 2015, the Ohio Court of Appeals dismissed the appeal upon finding the claim was not properly before the court, was untimely, and barred by the doctrine of *res judicata*. (Doc. 8, Ex. 28).

## Federal Habeas Corpus

Petitioner filed the instant federal habeas corpus petition on January 5, 2015. (Doc. 1). Petitioner raises the following two grounds for relief in the petition:

5

> **Ground One**: State Court erred in admitting evidence obtained in violation of the 4th Amendment to the U.S. Constitution.
>
> **Ground Two**: Petitioner's arrest and conviction are the result of an illegal search warrant and seizure of evidence in violation of his 4th and 14th Amendment rights.

(Doc. 1).

Respondent argues that the petition should be denied. (Doc. 9). According to respondent, petitioner's grounds for relief are not cognizable in federal habeas corpus.

## III. THE PETITION SHOULD BE DENIED

In this federal habeas case, the applicable standard of review governing the adjudication of the constitutional claims that were raised to and decided by the Ohio courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the

6

correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit recently explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold." . . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

7

The Supreme Court recently made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher,* __ U.S. __, 132 S.Ct. 38, 44 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 132 S.Ct. at 44, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. __, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] have already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

**A. Petitioner's grounds for relief are not cognizable in federal habeas corpus.**

In Ground One, petitioner contends that the evidence obtained though the search of his residence should have been suppressed because the search violated his rights under the Fourth and Fourteenth Amendments. In Ground Two, petitioner similarly contends that his arrest and conviction are the result of the alleged illegal search warrant and seizure of evidence.

Petitioner challenged the search warrant, seizure of evidence, and the denial of his motion to suppress on appeal to the Ohio Court of Appeals, who overruled the assignments of error as follows:

> {¶ 11} In his first assignment of error, Eldridge argues the trial court erred by not suppressing the evidence because the affidavit Det. Koch submitted to obtain the search warrant was insufficient to establish probable cause. We disagree.
>
> A.  Legal Analysis
>
> {¶ 12} "'A neutral and detached magistrate may issue a search warrant only upon the finding of probable cause.' "*State v. Westbrook,* 4th Dist. No. 09CA3277, 2010–Ohio–2692, at ¶ 18, quoting *State v. Gilbert,* 4th Dist. No. 06CA3055, 2007–Ohio–2717, at ¶ 13, citing *United States v. Leon,* 468 U.S. 897, 914–915, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) and Crim.R. 41(C). A warrant shall issue "only on an affidavit or affidavits sworn to before a judge of a court of record * * * establishing the grounds for issuing the warrant." Crim.R. 41(C).2
>
> {¶ 13} When considering the issuance of a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Considering the totality of the circumstances, "so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Gates* at 236, quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697(1960). Accordingly, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates,* at 238–239, quoting *Jones* at 271. "Neither the trial court nor an appellate court should substitute its judgment for that of the magistrate." *Westbrook* at ¶ 20, citing *State v. George,* 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), at paragraph two of the syllabus (following *Gates*). "The

reviewing court 'should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.'" *Id.* "[T]his standard of review is more deferential than the review we engage in other contexts involving a motion to suppress." *State v. Goddard,* 4th Dist. No. 97CA23, 1998 WL 716662 (Oct. 2, 1998), at fn.2, citing *State v. Klein,* 73 Ohio App.3d 486, 488, 597 N.E.2d 1141 (4th Dist.1991).

{¶ 14} "To make a valid finding of probable cause, a magistrate must be informed of: (1) the basis of the informant's knowledge; and (2) sufficient facts to establish either the informant's veracity or the reliability of the informant's information. *State v. Walker,* 4th Dist. No. 08CA3030, 2009–Ohio–1903, at ¶ 36, citing *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). *See, also,* Crim .R. 41(C). "'However, an affidavit lacking in these areas is not automatically insufficient to procure the issuance of a search warrant.'" *Westbrook* at ¶ 24, quoting *Goddard.* "These areas should instead be viewed as 'closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.'" *Id.* "Therefore, a deficiency in one area may be overcome by 'other indicia of reliability.'" *Id.*

{¶ 15} One such indicium of reliability is corroboration of the informant's story. "Corroboration lends credence to the remaining unverified portion of the informant's story by demonstrating that the informant has, to the extent tested, spoken truthfully." *Goddard,* citing LaFave, Search and Seizure (1996) 157, Section 3.3(e). "Furthermore, *Gates* explicitly reject[ed] the position that corroboration of innocent activity is not sufficient, noting that seemingly innocent activity can become suspicious in light of a prior tip." *Id.*

{¶ 16} Here, Det. Koch provided the trial court with testimony of several controlled buys where Eldridge sold oxycodone to an informant. On each occasion, between 9:00 a.m. and 9:00 p.m. Det. Koch gave the informant money he had previously photocopied and observed the informant enter Eldridge's residence. The informant had an audio recording device on him while the transactions took place. The informant later met Det. Koch at a predetermined location and gave Det. Koch a pill that contained oxycodone. The informant stated he had purchased the pill from "Pete D. Eldridge." Det. Koch and the informant conducted four controlled buys within four months, with one of the purchases coming from Eldridge's son. The last controlled buy occurred the day before the judge issued the search warrant. The informant later viewed photographs Det. Koch provided to him and identified Eldridge and his son as the persons who sold him the oxycodone.

{¶ 17} Moreover, the affidavit contained numerous anonymous calls made to law enforcement, alleging Eldridge or persons at his residence were selling drugs. "An anonymous tip cannot support probable cause * * * without corroboration.

10

*Alabama v. White* (1990), 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301. However, the corroboration must demonstrate the assertion of illegality and not just the identity of the person." *State v. Hunter,* 2d Dist. No. 24350, 2011–Ohio–6321, at ¶ 20, citing *Florida v. J.L.,* 529 U.S. 266, 272, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).

{¶ 18} In this case, the four controlled buys corroborated the anonymous tips. The tips alleged Eldridge was selling drugs from his residence and the informant corroborated Eldridge was in fact trafficking in controlled substances when he bought oxycodone from Eldridge on three occasions.

{¶ 19} We readily acknowledge the controlled buys were not textbook and there was no real-time surveillance of the transaction. Nor was the informant searched before or after the buys to insure the oxycodone came from Eldridge. See, *State v. Stephens,* 8th Dist. No. 94520, 2010–Ohio–6165, at ¶ 4; *State v. McIntire,* 6th Dist. No. H–10–004, 2011–Ohio–1544, at ¶ 40; *State v. Thompson,* 7th Dist. No. 08 CO 41, 2010–Ohio–3278, at ¶ 4; *State v. Holdren,* 4th Dist. No. 09CA14, 2010–Ohio–334, at ¶ 4.

{¶ 20} Yet considering the totality of the circumstances and the deference afforded to the judicial official who issued the search warrant, we find the affidavit provided a substantial basis for the judge to determine there was a fair probability that contraband or evidence of a crime would be found at the residence. While the informant was not searched before the controlled buys and there is the possibility he obtained the drugs from someone other than Eldridge and his son, Det. Koch did not have to establish Eldridge was guilty beyond a reasonable doubt or even establish a prima facie case when he applied for a search warrant. Det. Koch needed only establish there was a fair probability he would find contraband or evidence of a crime if the court permitted him to search Eldridge's residence and person, and the affidavit did just that. "[T]he standard for probable cause requires *only* a showing that a probability of criminal activity exists, *not* a prima facie showing of criminal activity." *State v. Young,* 146 Ohio App.3d 245, 765 N.E.2d 938 (11th Dist.2001), citing *George,* 45 Ohio St.3d at 329, 544 N.E.2d 640 and *State v. Taylor,* 82 Ohio App.3d 434, 440, 612 N.E.2d 728 (2d Dist.1992).

{¶ 21} Alternatively, had we determined probable cause to issue the search warrant did not exist, we find law enforcement acted in good faith in executing the search warrant. Pursuant to the exclusionary rule, "all evidence obtained by searches and seizures in violation of the [United States] Constitution is, by that same authority, inadmissible in a state court." *State v. Wilmoth,* 22 Ohio St.3d 251, 255, 490 N.E.2d 1236 (1986), quoting *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). "[T]he objective of the exclusionary rule [is] to deter willful, or at the very least negligent, police conduct which deprive[s] a defendant of some right." *Wilmoth* at 265. However, "the rule [is] useless when the police act in good faith." *Id.,* referencing *United States v. Leon,* 468 U.S. 897,

11

104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. '[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.' Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." (Citation omitted.) *Leon* at 921.

{¶ 22} Under the good faith exception to the exclusionary rule, a court may not suppress evidence obtained by officers "acting in objectively reasonable, good faith reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid." *Wilmoth* at paragraph one of the syllabus, citing *Leon* at 923. However, suppression remains appropriate where the officer relied on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." (Citations omitted.) *George,* 45 Ohio St.3d at 331, 544 N.E.2d 640, quoting *Leon* at 923. *See, also, State v. Johnson,* 4th Dist. No. 08CA6, 2008–Ohio–5907, at ¶ 18–19.

{¶ 23} In this case, the affidavit was not so devoid of indicia of probable cause so as to render Det. Koch's reliance upon it unreasonable. An affidavit that contains conclusory statements and nothing more specific is merely "bare bones" and insufficient to support to a magistrate's finding of probable cause. *See Gates,* 462 U.S. at 239, 103 S.Ct. 2317. The affidavit here was not merely conclusory and it was not "bare bones," nor was it so deficient as to render official belief in probable cause unreasonable. The affidavit contained numerous tips that Eldridge was trafficking in controlled substances, which Det. Koch corroborated when he conducted the controlled buys and Eldridge sold oxycodone to the informant.

{¶ 24} Accordingly, because Det. Koch and his brethren relied upon the search warrant in good faith, the good faith exception would apply. Thus, we overrule Eldridge's first assignment of error.

II.

{¶ 25} In his second assignment of error, Eldridge argues law enforcement not only unreasonably executed the search warrant on his residence in violation of the "knock and announce" rule, but he also argues the evidence obtained should be excluded because of this violation of his rights. Specifically, Eldridge relies upon R.C. 2935.12(A) and maintains this statute affords more protection than the common law "knock and announce" rule and its noted exceptions. *See Hudson v. Michigan,* 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006). However, because we find law enforcement officers did not violate R.C. 2935.12(A), and even if they had, exclusion of the recovered evidence is not the proper remedy, we disagree.

A. Legal Analysis

12

{¶ 26} "[W]hether law enforcement officers properly complied with the knock and announce procedures forms part of the reasonableness inquiry under the Fourth Amendment." *State v. Gilbert,* 4th Dist. No. 06CA3055, 2007–Ohio–2717, at ¶ 26, citing *Wilson v. Arkansas,* 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995).
R.C. 2935.12(A) provides:

> [W]hen executing a search warrant, the * * * authorized individual* * * executing the warrant * * * may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to * * * execute the warrant or summons, he is refused admittance * * *.

{¶ 27} Preliminarily, we note the "knock and announce rule," as codified in R.C. 2935.12(A) does not actually require law enforcement to knock, or rap on the door before entering. Rather, the rule, both common law and statutory, merely requires law enforcement announce its presence and intent, giving the occupant a chance to comply and admit law enforcement officers before condoning the breaking of doors or windows. *See, Gilbert* at ¶ 23, citing *State v. Amundson,* 108 Ohio App.3d 438, 670 N.E.2d 1083 (12th Dist.1996); *Wilson* at 931–934. Thus, the fact that Det. Koch did not actually knock on the door is not dispositive.

{¶ 28} Here, law enforcement complied with R.C. 2935.12(A) and the precondition for nonconsensual, forcible entry because the officers announced their intent to execute the search warrant and were refused admittance. As the lower court found, law enforcement officers made eye contact with Eldridge's son through the door. The son not only saw the officers, but he was also able to hear them as they announced their presence and intent to execute the search warrant when they shouted, "Sheriff's office, search warrant!"

{¶ 29} After law enforcement officers announced their intent to execute the search warrant, Eldridge's son did not admit them into the residence. Officers were unable to open the glass door and the son did not open it for them, despite having seen and heard them. The lower court found this to be a refusal of admittance and we must agree.

{¶ 30} Once the officers gave notice of their intent to execute the search warrant and the son refused admittance, this satisfied the precondition for nonconsensual, forcible entry and the officers had the right to breach the door with the battering ram. Accordingly, we find the officers did not violate R.C. 2953.12(A) and their execution of the search warrant was reasonable.

{¶ 31} Even if we were to find the execution of the search warrant was unreasonable, we do not believe suppression of the evidence would be the appropriate remedy. The knock and announce rule serves the interests of

> protecting life and limb "because an unannounced entry may provoke violence in supposed self-defense by the surprised resident"; and protection of property because it "gives individuals 'the opportunity to comply with the law and to avoid the destruction of property occasioned by a forcible entry.'" (Citation omitted.) *Hudson,* 547 U.S. at 594, 126 S.Ct. 2159. The rule also "protects those elements of privacy and dignity that can be destroyed by a sudden entrance." *Id.*
>
> {¶ 32} "What the knock-and-announce rule has never protected, however, is one's interest in preventing the government from seeing or taking evidence described in a warrant. Since the interests that *were* violated in this case have nothing to do with the seizure of the evidence, the exclusionary rule is inapplicable." (Emphasis in original). *Id. See, also, Gilbert,* 2007–Ohio–2717, at ¶ 32–29.
>
> {¶ 33} Therefore, we find the trial court did not err in refusing to suppress the evidence based upon law enforcement's alleged violation of the knock and announce rule. We overrule Eldridge's second assignment of error and affirm the lower court's judgment.

(Doc. 8, Ex. 12 at PageID 190-99).

The Supreme Court held in *Stone v. Powell*, 428 U.S. 465 (1976), that federal habeas courts are prohibited from addressing the merits of Fourth Amendment claims brought by state prisoners if the prisoner had a full and fair opportunity to litigate such a claim in the state courts and the presentation of the claim was not thwarted by any failure of the State's corrective process. *Stone,* 428 U.S. at 494–95. The Sixth Circuit has developed a two-step inquiry to assess whether *Stone* applies to preclude federal habeas review of Fourth Amendment claims. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982); *see also Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir. 2000). Under that inquiry, the federal habeas corpus court must determine (1) whether the State has provided a procedural mechanism through which, in the abstract, the petitioner could raise a Fourth Amendment claim, and (2) whether the petitioner's presentation of the Fourth Amendment claim was in fact frustrated because of a failure of that mechanism. *Id.*

In *Riley,* the Sixth Circuit held that by providing for the filing of a pretrial motion to suppress and the opportunity to directly appeal any ruling denying a suppression motion, Ohio

14

has a mechanism in place for the resolution of Fourth Amendment claims, which "is, in the abstract, clearly adequate." *Riley,* 674 F.2d at 526; *see also Loza v. Mitchell,* 705 F. Supp.2d 773, 860 (S.D. Ohio 2010). Therefore, the determination whether *Stone* applies turns solely on the resolution of the second *Riley* inquiry. *See Hillman v. Beightler,* No. 5:09-cv-2538, 2010 WL 2232635, at *5 (N.D. Ohio May 26, 2010).

Courts have consistently held that the "relevant inquiry" in resolving the second question posed in *Riley* is whether the "habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided" by the state courts. *Wynne v. Renico,* 279 F. Supp.2d 866, 892 (E.D. Mich. 2003) (citing *Ortiz–Sandoval v. Gomez,* 81 F.3d 891, 899 (9th Cir. 1996)).[2]

> As long as a state prisoner has had an opportunity to litigate his Fourth Amendment claims by means of procedures that are "suitably crafted" to test for possible Fourth Amendment violations, a federal habeas court does not have the power, under *Stone,* to "second-guess the accuracy of the state courts' "resolution of those claims." Thus, a "mistaken outcome" of a suppression hearing that has been conducted in a state trial court, standing alone, does not deny a habeas petitioner's opportunity to fully and fairly litigate his Fourth Amendment claims. . . . Thus, even "potentially meritorious Fourth Amendment claims" are barred by *Stone* on habeas review if the petitioner had a full and fair opportunity to litigate his claims in the state courts.

*Id.* (quoting *Sanna v. Dipaolo,* 265 F.3d 1, 8–9 (1st Cir. 2001), and *Deputy v. Taylor,* 19 F.3d 1485, 1491 (3rd Cir. 1994)); *see also Hillman, supra,* 2010 WL 2232635, at *5 (quoting *Cabrera v. Hinsley,* 324 F.3d 527, 531–32 (7th Cir. 2003)) ("Absent a subversion of the hearing process, we will not examine whether the judge got the decision right. . . . '[F]ull and fair' guarantees the right to present one's case, but it does not guarantee a correct result."); *Brown v. Berghuis,* 638

---

[2] The district court later supplemented its opinion in *Wynne* on another issue, which was determined to be sufficiently meritorious to justify the granting of a conditional writ of habeas corpus. *See Wynne v. Renico,* 595 F. Supp.2d 775 (E.D. Mich. 2009). Thereafter, the Sixth Circuit reversed the district court's revised judgment granting habeas corpus relief based on that other ground; the Supreme Court recently denied certiorari review of *Wynne v. Renico,* 606 F.3d 867 (6th Cir.), *cert. denied,* 131 S.Ct. 2873 (2011).

F. Supp.2d 795, 812 (E.D. Mich. 2009) (and cases cited therein) ("Under *Stone, . . .* the correctness of the state courts' conclusions is simply irrelevant.").

The Sixth Circuit has stated that the second *Riley* inquiry is "not meant to be a case by case review of state court determinations," but rather "is a review of whether the state provided an adequate mechanism to address Petitioner's Fourth Amendment claims." *Abdul–Mateen v. Hofbauer,* No. 98–2323, 2000 WL 687653, at *3 (6th Cir. May 19, 2000). In *Abdul–Mateen,* the court recognized that an exception was carved out in *Riley* for "egregious error in the application of fourth amendment principles" amounting to a refusal by the state courts to consider or apply controlling Supreme Court precedents. *See id.* (quoting *Riley,* 674 F.2d at 526, in turn citing *Gamble v. Oklahoma,* 583 F.2d 1161 (10th Cir. 1978)). In *Riley,* the Sixth Circuit explained that when an "egregious error" of such "magnitude and nature" is present, as it was in *Gamble,* "a federal habeas court *might* be justified in concluding that an opportunity for a full and fair hearing had not been afforded the petitioner." *Riley,* 674 F.2d at 526 (emphasis added). In a subsequent decision, the Sixth Circuit rejected a petitioner's argument that an egregious misapplication of a controlling Supreme Court precedent also could justify such a conclusion. *Gilbert v. Parke,* 763 F.2d 821, 824 (6th Cir. 1985). The court reasoned: "This court in *Riley* declined to adopt the portion of *Gamble* permitting federal review of egregious substantive errors committed by state courts on Fourth Amendment claims. . . . Since the [state] courts provided Gilbert a full and fair opportunity to litigate his Fourth Amendment claims, second-guessing the [state] Supreme Court on the merits would be inconsistent with *Stone." Id.*

Here, as in *Gilbert,* the record does not reflect the magnitude or type of "egregious error" referred to in *Riley* as possibly justifying a finding that the opportunity for a full and fair hearing was thwarted. *Cf. Bergholz v. McMackin,* No. 89–3740, 1990 WL 223036, at *3 (6th Cir. Dec.

16

27, 1990) (per curiam) (in ruling that *Stone* foreclosed the petitioner's Fourth Amendment claim, the Sixth Circuit pointed out that "even if the state courts were in error in applying substantive law regarding 'seizures' under the Fourth Amendment, the state courts did not refuse to follow applicable precedent"). To the contrary, it appears clear from the record that petitioner was able to fully and fairly litigate his claim of a Fourth Amendment violation in the state courts.

Petitioner was permitted to raise his claims to the trial court through a motion to suppress and the trial court held a hearing on the matter. (Doc. 8, Ex. 2, 4). Moreover, petitioner was able to challenge the trial court's ruling on direct appeal to the Ohio Court of Appeals and pursue his claims in the Ohio Supreme Court. (*See* Doc. 8, Ex. 10 & 13). As set forth above, the Ohio Court of Appeals carefully considered petitioner's arguments and the applicable precedents in affirming the trial court's ruling.[3]

After review of the entire record, the Court concludes that Grounds One and Two of the petition, challenging the search warrant and seizure of evidence under the Fourth Amendment, are barred from review under the Supreme Court's *Stone* decision.

Accordingly, in sum, petitioner is not entitled to habeas corpus relief and his habeas petition should be denied. Petitioner's grounds for relief are not cognizable in federal habeas corpus. Therefore, it is **RECOMMENDED** that petitioner's petition for a writ of habeas corpus (Doc. 1) be **DENIED** with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

---

[3] Petitioner "agrees he was afforded a suppression hearing, and a subsequent appeal to present his arguments, and advanced those claims to the Ohio Supreme Court." (Doc. 13 at PageID 436).

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which have been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

    s/ J. Gregory Wehrman
J. Gregory Wehrman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PETER D. ELDRIDGE,　　　　　　　　　　Case No. 1:16-cv-040
　　　Petitioner,
　　　　　　　　　　　　　　　　　　　　　Bertelsman, J.
　vs.　　　　　　　　　　　　　　　　　　Wehrman, M.J.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
　　　Respondent.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).